The UNITED STATES of America, Plaintiff,

v.

RED FRAME PARASAIL, Buckeye Model Eagle 503 (serial number 4159); White metal frame parasail (serial number 4462); White Toyota Tacoma pickup truck (VIN # 4TAWN72NXWZ151263), Defendants.

No. CIV 00–1567 PHX RCB.

United States District Court, D. Arizona.

July 24, 2001.

Lisa J. Roberts, U.S. Attorney's Office, Phoenix, AZ, for United States.

Wallace J. Baker, Jr., Thomas McMurray Baker, Baker & Baker, Phoenix, AZ, for Steven Stayner.

### ORDER

BROOMFIELD, Senior District Judge.

On August 15, 2000, the United States initiated forfeiture proceedings under 16 U.S.C. § 742j–1(e). The statute authorizes forfeiture of items used in violation of the Airborne Hunting Act ("AHA"), 17 U.S.C. § 742j–1.

Currently pending before the court are two motions to dismiss submitted by Claimant Steven Stayner.[1] Stayner questions whether his conduct falls under the

AHA and whether the statute can constitutionally be applied to his activities. Having carefully considered the arguments raised, the court now denies those motions.

### I. STATUTORY FRAMEWORK

Subsection (a) of 16 U.S.C. § 742j–1, the Airborne Hunting Act ("AHA"), sets penalties for any person who:

1. while airborne in an aircraft shoots or attempts to shoot for the purpose of capturing or killing any bird, fish, or other animal; or

2. uses an aircraft to harass any bird, fish, or other animal; or

3. knowingly participates in using an aircraft for any purpose referred to in paragraph (1) or (2).

16 U.S.C. § 742j–1(a). The statute expressly provides for forfeiture of equipment used to violate these provisions. 16 U.S.C. § 742j–1(e).

The AHA defines "aircraft" to include "any contrivance used for flight in air." 16 U.S.C. § 742j–1(c); *see also* 50 C.F.R. § 10.12. Regulations implemented by the Secretary of the Interior define "harass" as "to disturb, worry, molest, rally, concentrate, harry, chase, drive, herd or torment." 50 C.F.R. § 19.4.

### II. BACKGROUND[2]

Claimant Steven Stayner is a big game guide from Mesa, Arizona. Since 1998, the United States Fish and Wildlife Service ("Service") has been investigating Stayner for violations of the AHA.

---

1. Stayner filed a verified claim of ownership to the white metal frame parasail and the white Toyota Tacoma pickup truck. No party claimed the red frame parasail. Upon Plaintiff's motion, the court awarded default judgment against the red frame parasail on April 12, 2001.

2. Claimant Stayner did not include a factual statement in either motion to dismiss. The following description derives exclusively from Plaintiff's complaint, although the government raised additional allegations in its response brief.

In October 1998, California Fish & Game Warden Lieutenant Joe Brana reported Stayner's boasts of using a powered parachute[3] to scout "trophy antelope" in the area northwest of Seligman, Arizona.[4] Stayner also showed Brana photographs of a large buck, which appeared to have been taken directly above the deer.

Also in October 1998, Service investigators received information from a concerned private citizen who observed a powered parachute "chase" a herd of antelope in Cataract Canyon, Arizona. The citizen reported that a Toyota pickup truck appeared to follow the powered parachute. When the citizen later saw a similar truck, he approached the driver and reported what he had seen. The driver indicated that Steve "Steiner," a phonetic spelling that the Service understands as Stayner, piloted the parachute. The driver further stated that Stayner was guiding hunters the next day and was trying to locate elk with his aircraft.

Service Special Agent Leo Suazo initiated undercover contact with Stayner in March 1999. In telephone conversations, Stayner told Suazo that he used his powered parachute to view deer and to select specific animals for hunt. The two organized a guided hunt in October 1999.

On October 20, 1999, Stayner met Suazo at Phoenix Sky Harbor Airport. The two then drove in Stayner's Toyota pickup truck (Defendant 3) to retrieve Stayner's white metal frame powered parachute (Defendant 2). With the powered parachute in tow, they headed north to an area near the Grand Canyon. The next day, Suazo and a surveillance helicopter observed Stayner in his powered parachute. The helicopter tracked Stayner flying back and forth in a grid-like motion, at a very low

altitude, and in a pattern consistent with a search for wildlife. The pilots also watched the powered parachute chase a deer, causing it to run at a high rate of speed. Upon returning to land, Stayner told Suazo that "he jumped the big buck" near their camp.

On October 22, 1999, Stayner again used his powered parachute to locate game. After conducting a low-level search, Stayner returned to ground and reported "jumping" another large trophy buck. He told Suazo that he would have two deer to choose from in hunting.

### III. NOTICE OF SUPPLEMENTAL AUTHORITY

Before discussing the motions to dismiss, the court addresses the parties' dispute over Plaintiff's Notice of Supplemental Authority. On May 9, 2001, Plaintiff filed, "for informational purposes," an interim decision rendered by Judge Teilborg in CR–00–1185–PHX–JAT. That criminal suit involves A. Paul Stewart, Claimant in the parallel civil suit CIV–00–1569–PHX–RCB. In the relevant order, Judge Teilborg considered several of the same issues presented in Stayner's motions to dismiss.

Stayner challenges Plaintiff's notice. He argues that the ruling is based, in part, on oral arguments held before Judge Teilborg. Accordingly, he asks the court to supplement the record with the transcripts from those arguments, or, in the alternative, to strike Plaintiff's supplemental authority.

It is unnecessary to either order transcripts from the hearing before Judge Teilborg or to strike the supplemental authority. The court is entirely capable of

---

**3.** The complaint utilizes the term "parasail." Plaintiff clarifies that "parasail" and "powered parachute" are commercial terms. Resp. at 5 n.1. Both parties use the term "powered parachute" for purposes of this motion.

**4.** Stayner did not know Brana's occupation.

considering the order while noting its non-binding and non-precedential value. Having answered this dispute, the court will now consider the merits of Claimant's motions.

## IV. MOTIONS TO DISMISS

Stayner submitted two motions to dismiss the forfeiture complaint. The first focuses on the meaning of the AHA and whether it applies to Claimant's conduct. The second questions whether the statute can be constitutionally applied to Stayner's activities.

### A. Understanding the AHA

■ Stayner challenges whether his conduct warrants penalty under the AHA. He contends that the statute prohibits airborne activities only when a hunter[5] is present on board the aircraft or on the ground and hunting in conjunction with the person in the aircraft. Mot. at 21–27. Alternatively, he argues that Congress intended to reach only airborne activities coordinated with an onboard or on-the-ground hunter. S. Mot. at 2–5.[6]

■ The plain meaning rule is a cornerstone of statutory interpretation. It provides that:

Where the language is plain and admits of no more than one meaning the duty of interpretation does not arise and the rules which are to aid doubtful meanings need no discussion.

*Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917). Here, the statute is plain and unambiguous. Each subsection of 16 U.S.C. § 742j–

1(a) is separated by "or," not "and." The statute penalizes any person who:

1. while airborne in an aircraft shoots or attempts to shoot for the purpose of capturing or killing any bird, fish, or other animal; *or*

2. uses an aircraft to harass any bird, fish, or other animal;

16 U.S.C. § 742j–1(a) (emphasis supplied). The prohibited conduct is therefore disjunctive, creating liability for aerial harassment, independent of shooting or attempting to shoot. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 339, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979) (terms used in the disjunctive should "be given separate meanings, unless the context dictates otherwise"); *United States v. Tucor Int'l, Inc.* 238 F.3d 1171 (9th Cir.2001) (noting plain meaning of "or" in Hyde Amendment indicates a disjunctive test).

■ Although the statute is unambiguous, for completeness the court will examine to the legislative history to see if the plain meaning of the words is at variance with the policy of the statute as a whole or if there is clearly expressed legislative intention contrary to the language. *See Escobar Ruiz v. I.N.S.*, 838 F.2d 1020, 1023 (9th Cir.1988) (overruling on other grounds recognized by *Castillo–Villagra v. I.N.S.*, 972 F.2d 1017 (9th Cir.1992)). Claimant challenges that forfeiture based solely on subsection (a)(2) would conflict with legislative intent.

Congress enacted the AHA primarily in response to public outcry over a 1969 NBC film depicting the slaughter of wolves, shot

---

**5.** Claimant provides his own definition of "hunter:" a person who is armed and actively pursuing wildlife with the intent to "take" it as defined in 50 C.F.R. § 10.12: to pursue, hunt, shoot, wound, kill, trap, capture, or collect, or attempt to pursue, hunt, shoot, wound, kill, trap, capture, or collect. Mot. at 3 n. 1. Plaintiff challenges this definition, not-

ing the lay definition of "hunt" does not require the "armed" element.

**6.** The court will use "S. Mot." when referencing Stayner's "separately filed motion to dismiss the government's complaint for forfeiture *in rem* on the grounds that 16 U.S.C. § 742j–1 is unconstitutionally vague as applied to the claimant."

from aircraft. *See* Claimant's Ex. 6 at 3–4; Claimant's Ex. 7 and 3. As Representative Obey, co-sponsor of the AHA, commented: "killing animals from an airplane is hardly a legitimate sport." Claimant's Ex. 8 at 16. Co-sponsor and Representative Saylor exhorted:

> There are certain individuals, who are, in my opinion, about as low as a human could possible get, when with all of the modern devices that it is possible to place at the command of an individual, they are unwilling to walk, they are unwilling to tramp, they are unwilling to do anything else, but they would like to hire somebody to fly them around in an airplane and harass game and birds so that they may walk home and hang some animal's head from their walls in their den.

*See* Claimant's Ex. 5 at 8.

Claimant seizes upon these statements to support his understanding that the AHA intended only to reach airborne conduct coordinated with an onboard or on-the-ground hunter. The court finds a much broader theme in these statements: "unsportsmanlike behavior." Questioning before the House emphasized this point:

> Mr Anderson: Your bill is basically aimed at "sportsman?"
>
> Mr Saylor: Well, sportsman, so-called.
>
> Mr. Anderson: Yes, that is why I put the quotes around the word "sportsman," in this instance.

Claimant's Ex. 5 at 14. The extension beyond mere shooting from an aircraft to target harassment of wildlife is consistent with a congressional desire to eliminate "unsportsmanlike behavior" similar to that which Stayner allegedly undertook: using a powered parachute to scout, uncover, scare, and herd a particularly worthy buck. The plain meaning of the statute presents no conflict with this intent. *See* Claimant's Ex. 5 at 1 ("these bills would make it unlawful for anyone while airborne in an aircraft to shoot at *or* harass [wildlife]. . .").

This conclusion is supported by *United States v. One Bell Jet Ranger II Helicopter*, 943 F.2d 1121 (9th Cir.1991). As here, *One Bell* involved AHA forfeiture proceedings solely on the basis of 16 U.S.C. § 742j–1(a)(2). The claimants had used a helicopter to harass bighorn sheep; no "hunter," as defined by Stayner, was present. Although ultimately finding that government misconduct weighed against forfeiture, the Ninth Circuit held these facts formed a sufficient basis for forfeiture. 943 F.2d at 1124–27.

 Claimant argues that even if 16 U.S.C. § 742j–1(a)(2) penalties are proper, the court should employ the "rule of lenity" to deny forfeiture. The rule of lenity states that "where there is ambiguity in a criminal statute, doubts are resolved in favor of the Defendant." *United States v. Bass*, 404 U.S. 336, 347–50, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971). The rule is inapplicable; the AHA is unambiguous.

The court concludes that the plain language of 16 U.S.C. § 742j–1(a)(2) controls. The United States properly sought forfeiture under that provision.

## B. The AHA and Powered Parachutes

 Stayner raises another challenge to the AHA. He argues that the statute's prohibition against using "aircraft" to harass wildlife does not or was not intended to implicate powered parachutes. Mot. at 27–28.

The AHA defines "aircraft" to include "any contrivance used for flight in air." 16 U.S.C. § 742j–1(c). The applicable regulations echo the statutory language. 50 C.F.R. § 10.12 (". . . any contrivance used for flight in air"). *See also* 49 U.S.C. § 40102(6) (setting general definition for "aircraft," applicable to transportation

statutes under Air Commerce and Safety, as "...any contrivance invented, used, or designed to navigate, or fly in, the air"). This broad definition clearly and unambiguously includes Claimant's powered parachute.

Stayner nevertheless asks the court to look beyond the statute's plain language to find that it conflicts with congressional intent. In support, Claimant notes that Congress focused exclusively on helicopters and general aviation aircraft when discussing the statute. Mot. at 27. He also highlights that one AHA penalty is revocation of the violator's airman certificate—an item not required for pilots of powered parachutes.

Stayner's argument defies common sense. Congress was clearly concerned with "shooting or harassing of wildlife from *any* aircraft." 50 C.F.R. § 19.1 (emphasis added). The Senate specifically noted that "... harassing and chasing wildlife at low altitudes would certainly produce a safety hazard." Claimant's Ex. 7 at 5. As powered parachutes fly at low altitudes, the purpose of the AHA would not be best met by limiting the statute to airplanes and helicopters.

The court concludes that the plain language of the AHA must control. The statute is applicable to all aircraft, including powered parachutes. This holding in no way conflicts with the congressional intent underlying the AHA.

**C. Congressional Regulation of Powered Parachutes**

Stayner next argues that the AHA cannot apply to powered parachutes. He first contends that Congress has opted out of regulating ultralight aircraft, rendering 16 U.S.C. § 742j–1 inapplicable to powered parachutes. · Mot. at 28–31. His second argument centers on Congress' power to regulate activities in "non-navigable" airspace. Mot. at 31–34. This argument

dovetails with his final contention that the AHA, as applied to powered parachutes, exceeds Congress' power under the commerce clause. Mot. at 35–36.

1. *Current Regulations*

■ Federal rules govern the operation of ultralight vehicles, including powered parachutes. 14 C.F.R. § 103. Qualified vehicles are exempt from the airworthiness standards, registration requirements, and pilot certification standards necessary for other aircraft. 14 C.F.R. § 103.7. The exemptions, however, do not indicate that "Congress has essentially opted out of the federal regulation of ultralights, their pilots and their use." Mot. at 31. To the contrary, 14 C.F.R. § 103 sets standards for ultralight vehicles as well as operating instructions for the aircraft. There is no indication that the AHA would therefore not apply to powered parachutes.

■ Alternatively, 14 C.F.R. § 103.1 mandates that ultralight vehicles be "used for recreation or sport purposes only." Failure to comply with this proscription triggers "all aircraft certification, pilot certification, equipment requirements, and aircraft operating rules applicable to the particular operation." Pl.Ex. 2 (Advisory Circular 103–7) at 3. Accordingly, even if the court accepts Stayner's argument that powered parachutes are unregulated and not subject to the AHA, his use of a powered parachute in the context of a commercial enterprise would render him subject to general aviation regulations, including the AHA.

2. *The Commerce Clause*

Stayner challenges that the AHA cannot be constitutionally applied to powered parachutes as they do not fly in "navigable airspace." Plaintiff contests this position.

Courts have twice found the AHA valid under the commerce clause. *See United*

*States v. Helsley,* 615 F.2d 784 (9th Cir. 1979); *United States v. Bair,* 488 F.Supp. 22 (D.C.Neb.1979). Each focused on Congress' intent to regulate the safety of the national air space. *Helsley,* 615 F.2d at 786; *Bair,* 488 F.Supp. at 26. However, neither *Helsley* nor *Bair* addressed the specific issue of powered parachutes. Accordingly, the court must conduct its own analysis to determine if the AHA can be constitutionally applied to these machines.

■ Congress does not have unlimited authority to regulate under the commerce clause. *See United States v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). The Supreme Court has set forth three broad areas of permissible regulation: (1) the use of the channels of interstate commerce; (2) protection of the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities; and (3) activities having a substantial relation to interstate commerce. *Lopez,* 514 U.S. at 558–59, 115 S.Ct. 1624.

### a. *Channels of Interstate Commerce*

■ Congress has declared exclusive sovereignty of the airspace over the United States, granting a "public right of transit through the navigable airspace." 49 U.S.C. § 40103(a)(1) & (2). The extent of Congress' avigational power over is analogous to, stems from, and is subject to the same constitutional limitations as Congress' regulatory power over the "navigable waters" of the United States. *See Helsley,* 615 F.2d at 786. Accordingly, Congress has defined "navigable airspace" to include "airspace above the minimum altitudes of flight prescribed by regulations under this subpart and subpart III of this part, including airspace needed to ensure safety in the takeoff and landing of aircraft." 49 U.S.C. § 40102(a)(30). That definition is complemented by the regulations found at 14 C.F.R. § 91.119, which designate the minimum altitudes of flight over non-congested areas as 500 feet above the surface and, over open water and sparsely populated areas, 500 above any person, vessel, vehicle, or structure.

Federal regulations further delineate airspace into six classes: A, B, C, D, E, & G. 14 C.F.R. § 91.119. Stayner contends that powered parachutes fly only in class G airspace. He further characterizes the class as "non-navigable" and therefore constitutionally exempt from federal regulation. These arguments fail.

Powered parachutes are not restricted to class G airspace. With prior authorization, they may fly in other classes of airspace. 14 C.F.R. §§ 103.17, 103.23. The vehicles also have the mechanical ability to fly in other classes of airspace; the manufacturer indicates that Stayner's vehicle could reach an altitude of 10,500 feet. Claimant's Ex. 2. Thus, Stayner's argument that powered parachutes are limited to class G airspace fails.[7]

It is also clear that Congress both can regulate and has regulated class G airspace. Commercial aircraft both land and takeoff in class G airspace; these are controlled activities. Furthermore, federal regulations set the operating rules for ultralight vehicles. 14 C.F.R. § 103 Subpart B. The FAA promulgated the regulations to address the increase in ultralight activity and correlative increase in the "potential hazard to other aircraft and operators, as well as to the ultralight operators themselves." Pl.Ex. 2 at 2. The FAA found

---

7. Furthermore, it appears that the federal regulations governing ultralight craft define class G space as 1,200 feet or less above the surface. 14 C.F.R. § 103.23. This would bring ultralights within the very definition of navigable airspace (500 feet or more in non-congested areas). 14 C.F.R. 91.119.

that "operations of these vehicles are now a significant factor in aviation safety." *Id.* Accordingly, the court rejects Stayner's argument that powered parachutes fly only in "non-navigable" airspace.

In conclusion, the court finds that the AHA, as applied to powered parachutes, validly regulates the use of a channel of interstate commerce: navigable airspace. *Lopez,* 514 U.S. at 558, 115 S.Ct. 1624. There is no additional requirement that the regulated activity substantially affect interstate commerce. *See United States v. Ripinsky,* 109 F.3d 1436, 1444 (9th Cir. 1997). Thus, it is constitutional under the Commerce Clause. This holding would be sufficient to dispose of Stayner's commerce clause challenge. Nevertheless, in an abundance of caution, the court examines whether the AHA meets the other *Lopez* standards.

b. *Instrumentalities of Interstate Commerce*

■ Congress enacted the AHA to protect wildlife as well as aircraft and airborne passengers. The Subcommittee on Fisheries and Wildlife heard testimony about mass slaughter of wildlife, property damage, and at least one death resulting from a mid-air collision where two pilots engaged in airborne hunting. *Helsley,* 615 F.2d at 787; Claimant's Ex. 6 at 4; Claimant's Ex. 5 at 19. This testimony and Congress' clearly articulated safety concerns indicate that the AHA comes within the ambit of the second *Lopez* category: regulation of the instrumentalities of interstate commerce and protection of persons and things in interstate commerce.

■ Stayner challenges that the AHA, as applied to powered parachutes, is distinguishable because powered parachutes are used solely for intrastate recreational purposes. Despite Stayner's position, powered parachutes are not limited to intrastate use either by federal regulations, 14

C.F.R. § 103, or the manufacturer's operating instructions, Claimant's Ex. 2. However, even assuming that use of powered parachutes is strictly an intrastate activity, the statute would still be constitutional; for, *Lopez* reaches persons or things in interstate commerce, even though the threat may come only from intrastate activities. *Lopez,* 514 U.S. at 558, 115 S.Ct. 1624; *Nat'l Ass'n of Home Builders v. Babbitt,* 130 F.3d 1041, 1046 (D.C.Cir.1997) (upholding prohibition of "taking" endangered animals, applied to a species of fly found solely within one state). The FAA has specifically noted the threat ultralight vehicles pose to other aircraft and operators, stating that "operations of these vehicles are now a significant factor in aviation safety." Pl.Ex. 2 at 2.

The court therefore finds that the AHA, as applied to powered parachutes, meets the second *Lopez* standard. There is no additional requirement that the regulated activity substantially affect interstate commerce. *See United States v. Ripinsky,* 109 F.3d 1436, 1444 (9th Cir.1997). Again, this conclusion would be sufficient to uphold the statute; the court will nevertheless examine whether the statute meets the third *Lopez* category.

c. *Substantially Effects*

■ The final *Lopez* category authorizes congressional regulation of activities that substantially effect interstate commerce. *Lopez,* 514 U.S. at 558–59, 115 S.Ct. 1624. The Supreme Court utilized this standard to evaluate the contested statute in *Lopez,* which made it a federal crime to knowingly possess a firearm in a school zone. The Court concluded that the statute exceeded Congress' authority under the commerce clause. This holding rested in large part on the non-economic and criminal nature of the statute. *See also United States v. Morrison,* 529 U.S. 598, 610, 120 S.Ct. 1740, 146 L.Ed.2d 658

(2000) (analyzing *Lopez* to conclude that the civil remedy provision of the Violence Against Women Act exceeded congressional regulatory power under the commerce clause).

The AHA contrasts with the federal statutes at issue in both *Lopez* and *Morrison*. It directly addresses economic activity: hunting. Congress was well aware of the economic character of hunting, and particularly airborne hunting, when it enacted the AHA. *See* Claimant's Ex. 5 at 8 (there are certain individuals who call themselves sportsman... they are unwilling to walk, they are unwilling to tramp... but they would like *to hire* somebody to fly them around in an airplane and harass game and birds) (emphasis supplied). The statute directly targets the practice of hiring a pilot to assist in the scouting and killing of quarry.

The AHA regulates not only commercial activity, but interstate commercial activity. Hunters travel interstate as do the animals they hunt. The AHA therefore serves as a national program with direct and substantial effects on interstate commerce. *See Palila v. Hawaii Dep't of Land and Natural Resources*, 471 F.Supp. 985, 994–95 (D.Haw.1979), aff'd, 639 F.2d 495 (9th Cir.1981) ("a national program to protect and improve the natural habitats of endangered species preserves the possibilities of interstate commerce in these species and of interstate movement of persons, such as amateur students of nature or professional scientists who come to a state to observe and study these species, that would otherwise be lost by state inaction.").

■■■■ Stayner finally asserts that his activities occurred solely within the state of Arizona and therefore did not substantially affect interstate commerce. Even construing Stayner's activities as solely in-

trastate in character would not invalidate the statute. "Where a general regulatory statute bears a substantial relation to commerce, the *de minimis* character of individual instances arising under that statute is of no consequence." *Lopez*, 514 U.S. at 557, 115 S.Ct. 1624 *citing Wickard v. Filburn*, 317 U.S. 111, 126 n. 27, 63 S.Ct. 82, 87 L.Ed. 122 (1942).

The court concludes that the AHA, as applied to powered parachutes, meets this third *Lopez* standard. All of Stayner's commerce clause arguments fail.

## D. Vagueness of the Term "Harass"

■■■■ Subsection (a)(2) of 16 U.S.C. § 742j–1 prohibits use of an aircraft to "harass any bird, fish, or other animal." Regulations promulgated by the Secretary of Interior define "harass" as "to disturb, worry, molest, rally, concentrate, harry, chase, drive, herd or torment." 50 C.F.R. § 19.4. Stayner argues that the definition is unconstitutionally vague.

■■■■ A criminal statute may be "void for vagueness" under the Due Process Clause if (1) the law does not provide minimally adequate notice to individuals who might be prosecuted, or (2) it grants too much discretion to law enforcement authorities without standards to avoid arbitrary and discriminatory enforcement. *See Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983). Statutes that do not regulate fundamental constitutional rights must be examined in light of the facts of the case. *See Chapman v. United States*, 500 U.S. 453, 467, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991). Thus, Stayner cannot suggest activities where the term "harass" might be found vague; he must show that the statute did not give notice that his activities would be prohibited.[8] *Id.*

---

**8.** Accordingly, Stayner's reliance on *Chicago v. Morales*, 527 U.S. 41, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999) is misplaced. That case,

evaluating a state law penalizing "criminal street gang members" from "loitering" in

Here, Plaintiff charges Stayner with flying at low altitudes in order to chase and herd wild animals as part of a plan to scout "trophy" animals for himself and others to hunt. A plain reading of the definition of "harass" would encompass these activities. This holding is supported by *United States v. One Bell Jet Ranger II Helicopter,* 943 F.2d 1121 (9th Cir.1991). In *One Bell,* the Ninth Circuit found that the Service's definition of harass "... clearly advances the purposes of the statute." *Id.* at 1124. Similar to Stayner, the claimants attempted to locate animals with a helicopter in order to identify the best trophy animal. *Id.* at 1125. The court found this activity satisfied the statute, including any intent requirement that might be read into it. *Id.* at 1126.[9]

The court concludes that "harass" is not unconstitutionally vague. Stayner's motion to dismiss on this basis is denied.

## V. CONCLUSION

The court denies both of Stayner's motions to dismiss. The AHA properly applies and can constitutionally be applied to Stayner's conduct. Accordingly,

IT IS ORDERED denying Claimant's motion to dismiss (doc. 6); and

IT IS FURTHER ORDERED denying Claimant's separately filed motion to dismiss (doc. 8).

---

public places, implicated constitutionally protected rights. *Id.* at 54, 119 S.Ct. 1849.

**9.** "The legality of using aircraft to scout or locate wildlife, when done at an appropriate distance" was not before the court in *One Bell.* 943 F.2d at 1125 n. 3. This does not affect the court's analysis. Stayner must show that the statute did not give notice that his activities would be prohibited. He has not made this showing.